**UNITED STATES, Appellee,**

**v.**

**Edgar A. EVANS, Private, U. S. Army, Appellant.**

**No. 29,984.**

U. S. Court of Military Appeals.

Nov. 7, 1975.

---

*J. Francis Pohlhaus*, Esquire, *Colonel Victor A. DeFiori, Lieutenant Colonel James*
*Kucera, Captain Ronald Lewis Gallant*, and *Captain Ralph E. Sharpe* were on the pleadings for Appellant, Accused.

*Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner*, and *Captain Gary F. Thorne* were on the pleadings for Appellee, United States.

## OPINION OF THE COURT

COOK, Judge:

Convicted by a general court-martial of a number of offenses in violation of the Uniform Code of Military Justice, including rape, in a barracks in the presence of a number of bystanders, the accused contends he was denied the effective assistance of counsel and due process of law during the convening authority's review of the record of trial.

Accused's appointed defense counsel was also detailed to represent four other persons charged with offenses occurring during the same events that led to the charges against the accused. On "many occasions" before trial, the defense counsel met with the various accused, individually and in groups. After Evans' trial, two of the co-accused, Raley and Smith, alleged that, at a meeting before the trial, which was attended by counsel and all the accused except Evans, Raley proposed to benefit the accused, who is black, "by associating him . . . with four white defendants" in the court-martial proceedings; for that purpose, he asked defense counsel to "seek to have all five of us tried jointly." According to them, counsel rejected the proposal as the white accused might "be adversely affected by discrimination" against Evans because of his "race" and because Evans was also facing a greater number of charges than the others. Raley and Smith further maintained that the four accused present at the discussion "volunteered to testify on behalf of Evans"; while the defense counsel "led . . . [them] to believe he would call us as defense witnesses" and they were "present and ready to testify" at Evans'

trial, only one of them, Johnson, was actually called as a defense witness.[1]

At the Government's request, the defense counsel responded to the affidavits by Raley and Smith. In a letter to the trial counsel, he indicated that while he needed time to reflect on the Raley-Smith affidavits and to consult his notes, he could comment briefly on their allegations. He represented that he did not want them to testify at Evans' trial, which was scheduled first, and "then come up and testify some other way at their own trial." He was afraid they "would probably forget what they had testified to" at Evans' trial and he did not want them "locked in on" that testimony. Further, he maintained he did not "realistically" want "any of the prejudice . . . by the court" that might result from consideration of an act charged to Evans to affect the other accused who "might have not been involved" in that act.

In his later affidavit, the defense counsel gave a three-part reason for his rejection of the proposal for a joint trial. "Part of the rationale" was that some of the charges against Evans "could have adversely affected the other four individuals." Additionally, he felt that separate trials "would better our negotiating position" should any accused desire to negotiate with the convening authority. The "overriding" circumstance was the possible divergence of defenses, with one accused relying upon "consent on the part of the victim," while another "might" rely on "an outright denial of any act of intercourse"; the several defenses would be "too inconsistent" for the court members "to be able to acquit one defendant because of a defense of consent and then in the same breath . . . acquit another defendant because of a denial of an act of intercourse." As to his rejection of three of the four co-accused as witnesses for Evans, he stated that the one he called, Johnson, had the least charges against him; therefore, he believed Johnson would be "viewed by the" court members as a "more disinterested witness" than the others.

Also, he believed the testimony of co-accused Raley, Smith, and Butner "could become inconsistent with at least one of the positions Evans was going to project at trial." And, finally, he felt these three could "have been more effectively impeached" at trial than Johnson.

In both letter and affidavit, the defense counsel maintained that prior to trial all the accused had indicated they did not "like the way" he was representing them. He, therefore, gave them the opportunity to obtain other counsel, "with no hard feelings on either side of the coin." Although he does not directly say so, counsel implies that Evans and the others refused the proffer of substitute counsel. However, after Evans was convicted and sentenced to a dishonorable discharge and confinement at hard labor for 10 years, the other four accused obtained new counsel. At his trial, Raley was acquitted of charges of rape and lewd and lascivious conduct; the charges against Smith are not specified, but he was sentenced to confinement at hard labor for 6 months; the charges against Johnson were dropped; and Butner, who was also convicted of undescribed charges, was sentenced to a bad-conduct discharge.

The American Bar Association standards relating to the administration of criminal justice correctly observe that the "potential for conflict of interest in representing multiple defendants is so grave" that a lawyer should refuse to act for more than one of several accused unless "after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." ABA Standards, The Defense Function § 3.5(b); see also ABA Code of Professional Responsibility, DR 5–105.

█ The Government contends that defense counsel made tactical decisions in the interest of "equal benefits to all accused." We read counsel's own account of those decisions as leading, inescapably, to the conclusion that he subordinated possible advantages to Evans to the interests of the other

---

1. Raley and Smith also attribute certain racial slurs to the defense counsel. The view we take of the issue makes it unnecessary to consider the validity or the impact of this allegation.

accused. First, not one aspect of the tripartite reason for insisting on separate trials considered only the consequences to Evans; all aspects of the reason stressed the possible prejudice to the other accused. Thus, one aspect was that the additional charges against Evans could adversely influence the court members against the other accused present at the time of the commission of those offenses. Also, if a separate trial for each, rather than a joint trial for all, could indeed provide a "better negotiating position" with the convening authority, as perceived by counsel, it could only be because of the difference in charges; as Evans faced the largest number of charges, rejection of the joint trial proposal placed him behind all the other accused. Secondly, the defense counsel concedes he rejected Raley, Smith, and Butner as witnesses for Evans, not because aspects of their testimony might operate against Evans, but because he feared possible disadvantage to them at their own later trials.

Whether a joint trial, with testimony by Raley, Smith and the others, would have produced better results for Evans is unknowable. Nor can we say that just because the other accused had such favorable results with other attorneys, that Evans' trial attorney was so ineffective as to deny him the kind of representation which is constitutionally guaranteed. However, we can say with assurance that important tactical decisions made by the defense counsel were dictated by counsel's desire to further the interests of Evans' co-accused, not those of Evans. Evans was entitled to undivided loyalty from his counsel and to counsel's best judgment in his behalf, not in behalf of the others, even though they were co-accused. *United States v. Lovett*, 7 U.S.C. M.A. 704, 23 C.M.R. 168 (1957). Under these circumstances, we are not persuaded that we should attempt "nice calculations as to the amount of prejudice" that may have resulted to Evans. *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Nor are we persuaded by

the fact that counsel "adequately apprised" Evans of the discussions he had with the other defendants to conclude that Evans knowingly consented to the subordination of his own interests to those of the co-accused. As counsel's statements indicate he perceived no wrong in what he did, we cannot conclude that Evans sanctioned the decisions, knowing they were dictated not in his interest, but in the interests of the co-accused.[2]

■ In focusing, as we have, on the failure of defense counsel to discern his own disability to represent the conflicting interests of his several clients, we are not to be understood as exonerating others from all responsibility in a matter of this kind. Here, the conflict of interest became apparent only in the discussion between counsel and the accused, but everyone concerned with the appointment and efficacy of counsel must be alert to the actuality, or potentiality, of a disabling conflict of interest whenever a single lawyer is considered for assignment to, or already represents, multiple accused. Those responsible for appointing counsel for multiple accused should initially determine, on the basis of the evidence then available, whether there is a possibility of conflicting interests. When such a possibility exists, a different lawyer should be appointed for each accused. Later, the several accused and their counsel might conclude that no conflict exists; in that event, they may agree on the apportionment of responsibility of the conduct of the defense or in the withdrawal of one or more of the assigned lawyers. *See* ABA Code of Professional Responsibility, EC 5–14 to –16; ABA Standards, The Defense Function § 3.5; ABA Standards, The Function of the Trial Judge § 3.4(b).

The decision of the Court of Military Review is reversed and the findings and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army for resubmission to the con-

---

2. In view of our disposition of the case on this ground, we need not consider the merits of the second assignment of error.

vening authority. A rehearing may be ordered.

Chief Judge FLETCHER and Senior Judge FERGUSON concur.