UNITED STATES, Appellee,

v.

Larry A. DAVIS, Private U. S. Army, Appellant.

No. 32,385.
CM 433636.

U. S. Court of Military Appeals.

Oct. 11, 1977.

*Captain Derryl W. Peden* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock, Major Joe D. Miller,* and *Captain John C. Carr.*

*Captain Gay M. Holmes* argued the cause for Appellee, United States. With her on the brief were *Colonel Thomas H. Davis, Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner,* and *Captain William C. Kirk.*

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted of unlawful possession of a switchblade knife, and robbery, in violation of Articles 92 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 922, respectively. He was sentenced to a dishonorable discharge, total forfeitures and confinement at hard labor for 2 years. Both the convening authority and the United States Army Court of Military Review approved the findings and sentence. The issue for resolution is the stan-

dard to be employed by an appellate court in evaluating the effect of a conflict of interest by defense counsel upon the right to the effective assistance of counsel under the Sixth Amendment. Appellate defense counsel urge that the Court of Military Review erred in testing for prejudice, rather than presuming prejudice, where the assistant defense counsel had earlier represented the government's principal witness in regard to his involvement in the instant case. We regard the actions of this defense counsel as tantamount to an abandonment of his client, so failure of the trial judge to take the necessary steps to insure compliance with the Sixth Amendment rights in question, requires reversal. *United States v. Brooks,* 25 U.S.C.M.A. 277, 287, 54 C.M.R. 793, 803, 2 M.J. 102, 108 (1977) (Fletcher, C. J., concurring in the result).

■ Examination of the record and allied papers[1] indicates that three individuals—the accused, Private Grady, and Specialist Four Piazza—were initially charged with participation in the robbery. At the Article 32[2] investigation Private Grady and the accused indicated their desire to be represented by a Captain Sano, and Specialist Piazza individually requested to be represented by a Captain Wiley. On April 22, 1975, approximately one month after the Article 32 investigation, Private Grady received a grant of immunity from the prosecution in return for his anticipated testimony against the accused and SP4 Piazza who were tried in common on May 6, 1975.[3] They were represented jointly by Captains Wiley and Sano who were appointed on the convening order as defense counsel and assistant defense counsel respectively. Private Grady testified on behalf of the prosecution and provided the bulk of the case against the accused and SP4 Piazza.[4] Throughout the trial, Captain Wiley conducted all the examination, cross-examination, and argument.[5]

■ Counsel for the appellant, in reliance upon our decisions of *United States v. Lovett,* 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957), and *United States v. Thornton,* 8 U.S.C.M.A. 57, 23 C.M.R. 281 (1957), argue that, under the facts of this case, the accused was denied effective assistance of counsel. They contend that an accused has a right to undivided loyalty from his attorney,[6] and that regardless of the motive[7] of the given

1. Although we are normally precluded from consideration of the allied papers in our review of a case, *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973), we may consider such evidence and other matters outside the record where the question of effectiveness of counsel is concerned. *See United States v. Hancock,* 49 C.M.R. 830 (A.C.M.R. 1975); *United States v. Gaillard,* 49 C.M.R. 471 (A.C.M.R. 1974); *United States v. Zuis,* 49 C.M.R. 150 (A.C.M.R. 1974).

2. Uniform Code of Military Justice, 10 U.S.C. § 832.

3. As will be detailed in later portions of this opinion, this record is barren of the essential underlying facts surrounding the manner in which Grady's grant of immunity was secured. The trial judge and counsel engaged in only the most perfunctory colloquy on an issue as to the apparent conflict of interest which obviously merited a full discussion and inquiry by the judge. In so doing, they have failed to provide us with a fully developed record upon which to judge the contentions presented.

We are obliged to find that a conflict did, in fact, exist as the accused's counsel represented both the key government witness who testified against the accused pursuant to a grant of immunity and the accused. Representation of two such clearly antagonistic interests on the same case can not be regarded by us as a conflict-free situation. Absent evidence to the contrary and complaint from either defense counsel, we must assume that the government acted properly in its role of securing the grant of immunity for Grady, and therefore, it was secured with the knowledge and/or assistance of counsel.

4. The robbery victim also testified for the prosecution.

5. Captain Wiley even conducted the sentencing phase of the trial for both men which raises different questions of conflicts not pertinent to the resolution of this case.

6. ABA Standards, The Defense Function §§ 1.6 and 3.5. *See* ABA Code of Professional Responsibility, EC 7–9 and 7–17, and DR 7–101(A).

7. The real problem is not improper motive or intent on the part of counsel, but instead insensitivity to issues of conflicts of interest by not only the counsel but also the trial judiciary. *See United States v. Evans,* 1 M.J. 206 (1975).

attorney, an appellate court must resolve even questions of doubtful conduct in favor of an accused, and conclude, absent evidence to the contrary, that this conduct was antagonistic to the best interests of his client. *United States v. McCluskey,* 6 U.S. C.M.A. 545, 20 C.M.R. 261 (1955). Counsel contend that we should apply the standard enunciated by Judge Ferguson in *Thornton,* that the proper test is not whether the counsel could have done more, but whether because of the given conflict he did less. The government (as did the Court of Military Review), while recognizing the above precepts, contends that the proper focal point must be an examination of the record for indicia of ineffectiveness, and that absent such indicia, no relief is warranted. Pivotal to this position are the following assumptions: (1) the only method of determining the effectiveness of a counsel in this situation is to examine his conduct at trial; (2) the record must only be examined in terms of Captain Wiley's effectiveness, as

he was the one who actually conducted all phases of the trial;[8] and (3) the fact that the witness Grady *may* have severed his relationship with Captains Wiley and Sano after securing the grant of immunity moots the question of undivided loyalties. *See United States v. Donatelli,* 484 F.2d 505 (1st Cir. 1973).[9] They conclude that, as their examination of the record reveals a vigorous examination of the witness Grady by Captain Wiley, the accused has no valid complaint.

The principal difficulty for this Court in resolving the questions presented lies with the failure of the trial judge to ascertain *on the record* the existence of any potential conflicts of interest or divisions of loyalty by the counsel, and to, in turn, advise this accused of the situation as well as its ramifications, and then elicit from him an *informed* decision as to whether he desired to proceed with his counsel or retain/obtain another. We find the perfunctory inquiry[10] conducted by the trial judge

8. It is clear from both the record of trial and the allied papers that an attorney-client relationship between Captain Sano and the accused and Private Grady existed; hence our inquiry cannot be limited to the actions or inactions of Captain Wiley as suggested by the government.

9. As detailed in note 3, there is no evidence to support this contention. As such, the fact that Grady ultimately testified for the government does not moot the issue in and of itself. The principles regarding the protections of the Sixth Amendment are not made academic by such formalistic changes in the status of the given witness. *See United States v. McCord,* 509 F.2d 334 (D.C.Cir. 1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). Further, the conflict does not end as the government suggests, for there is a continuing duty for a counsel to refrain from taking actions adverse to the interest of a former client in those matters in which the attorney represented him. *United States v. Gaines,* 529 F.2d 1038 (7th Cir. 1976); ABA Code of Professional Responsibility, EC 4–5 and DR 5–105(A). We decline to follow *United States v. Donatelli,* 484 F.2d 505 (1st Cir. 1973), to the extent that it suggests an opposite view.

10. The entire discussion is set forth below:
MJ: Now, have you discussed the possibility of a conflict of interest in this case with your clients and among yourselves?

DC: Yes, we have, Your Honor.
MJ: Are you satisfied that there is no conflict of interest in the representation of the accused?
DC: Yes, Your Honor.
MJ: Very well. It appears that counsel for both sides have the requisite qualifications. Proceed.
This terse inquiry should be compared to the standard set forth long ago by the Supreme Court in *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), concerning the need for affirmative judicial involvement in the waiver process:
[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive his right does not automatically end the judge's responsibility . . . A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.
We feel that the military's actions as demonstrated by the trial judge's inquiry speak louder than the dissenting judge's words on the question of insensitivity. *See also* note 7.

wholly unsatisfactory to establish a knowing intelligent waiver of the accused's Sixth Amendment rights. This Court in *Thornton* admonished both counsel and judges at the trial level to conduct an inquiry prior to arraignment for the purpose of making a record, and assuring that "the accused is fully cognizant of the limitations and restrictions placed upon his counsel." [11] Only in this manner can we be sure that "an accused can make an enlightened election whether to retain appointed counsel or seek a replacement." [12]

Examination of the applicable federal case law reveals that the courts in this highly sensitive area have developed a procedure to insure that the dilemma presented to us in this case does not occur. Recognizing that one of the very fundamental bases of a fair trial is the right of an accused in a criminal prosecution to the effective assistance of counsel,[13] the Supreme Court has long held that a court should "indulge every reasonable presumption against the waiver of" these rights.[14] *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); [15] *Boyd v. Dutton,* 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972). *See also Dukes v. Warden, Connecticut State Prison,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). Waiver of the right to counsel requires not

merely comprehension, but relinquishment as well, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Although this right may be waived,[16] the record must reflect that the trial judge has properly determined that a valid waiver is satisfactorily established. *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Supreme Court further refined the *Johnson* standard concerning the effective waiver of a constitutional right in *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970), by requiring that such waivers not only be voluntary, but also be "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." With these precepts as well as this Court's aforementioned admonition in *Thornton* in mind, we are constrained to hold that corrective action is required in this case, for we will not infer waiver of such a right absent the record's affirmative establishment of a valid waiver under *Brady. See United States v. Peebles,* 3 M.J. 177 (C.M.A. 1977).

A problem which has characterized military trial practice and distinguishes it from its federal counterpart is an insensitivity to situations of dual representation, and the attendant conflicts of interests and divisions of loyalty. In both *United States v. Evans,* 1 M.J. 206 (1975), and *United States*

---

11. *United States v. Thornton,* 8 U.S.C.M.A. 57, 61, 23 C.M.R. 281, 285 (1957).

12. *Id.*

13. It has long been the rule that if the right to counsel is to be meaningful it must mean the right to the effective assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Clearly, the trial court is obliged to maintain proper standards of performance by attorneys representing defendants in criminal cases. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Rivas,* 3 M.J. 282 (C.M.A. 1977).

14. The Court in a long series of decisions has repeatedly held that in instances of conflicts between the rights of the state and the protections contemplated by the Sixth Amendment, these conflicts must be resolved in favor of the right to the assistance and guidance of counsel. *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Brooks v. Tennes-*

*see,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).

15. *See Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). As the Court noted in *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the presumption against waiver is so compelling that not even the fact that a defendant is an experienced attorney will be held to be conclusive on the question of whether there was a valid waiver of his right to the assistance of counsel.

16. Certainly if a defendant can knowingly and intelligently waive his right to counsel, *Farretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), there should be little doubt that upon proper apprisal by the trial judge, he can waive his right to a conflict-free counsel. *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975).

v. Blakey, 1 M.J. 247 (1976), we admonished trial personnel to carry the burden of ascertaining the absence of any possibility of conflicts; yet no procedure has been developed to satisfactorily accomplish this objective. Obviously, as suggested in Blakey, the appointment of separate counsel for each accused should serve to alleviate most problems. However, we feel that it ultimately must be the responsibility of the trial court upon the appearance of a conflict to bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so that he can make an informed judgment at the time as to whether he wishes to continue with his present counsel or wishes new counsel.. United States v. Alberti, 470 F.2d 878 (2d Cir. 1972), cert. denied, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); Morgan v. United States, 396 F.2d 110 (2d Cir. 1968). The trial judge must determine whether a potential conflict exists and its basis, if any, as well as whether there may be confidential or privileged material involved. If so, he is obliged to determine whether the privilege will be waived,[17] or if the privileged matters would nonetheless be inadmissible on a separate basis in resolving the impact of the conflict on the effectiveness of the representation which a counsel can give his client. United States v. Jeffers, 520 F.2d 1256 (7th Cir. 1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).[18] Although the precise format of such a hearing need not be rigidly constructed, we approve the concept set forth in United States v. Garcia, 517 F.2d 272, 278 (5th Cir. 1975):

> In accordance with the foregoing principles, we instruct the district court to follow a procedure akin to that promulgated in F.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record. . .
> As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. Cf. United States v. Foster, 469 F.2d 1 (1st Cir. 1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." National Equipment Rental v. Szukhert, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354, 367–8 (1964). Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

If the guidance set forth in this procedure is followed, the trial judge would fulfill his

---

[17] As noted in United States v. Jeffers, 520 F.2d 1256 (7th Cir. 1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1975), the privilege belongs to the witness, not the defendant.

[18] The decision in United States v. Alberti, 470 F.2d 878 (2d Cir. 1972), cert. denied, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973), raises two additional factors for consideration by the trial judge in instances of privileged materials: (1) whether the privileged material could possibly have been discovered through any other avenue of discovery; and/or, (2) whether the facts suggest that the witness in question had no interest left for the attorney to protect, which obviates the conflict.

duty, and if despite the conflict and attendant dangers, the defendant elects to continue with the same counsel, he will be held to have waived his Sixth Amendment rights. *United States v. Gaines,* 529 F.2d 1038 (7th Cir. 1976). Only through the institution of such a procedure can we attempt to resolve questions such as presented in this case by an examination of the actual conduct of the counsel at trial.[19] Clearly in the absence of the information elicited from such a hearing, the device of resorting to such an examination is wholly unsatisfactory in proper appellate evaluation.[20]

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General. A rehearing may be ordered.

Judge PERRY concurs.

COOK, Judge (dissenting):

On the basis of my familiarity with military trial practice as counsel to the House Armed Services Committee and, more recently, as a Judge of this Court, I disagree with the majority's assertion that the practice is characterized by "insensitivity to situations of dual representation, and the attendant conflicts of interests and divisions of loyalty." I wrote the opinion for the Court in *United States v. Evans.*[1] There, I stressed that all persons having responsibility in regard to defense counsel's representation of multiple accused should scrutinize such representation for "the possibility of conflicting interests." But, I did not intend to charge, and I believe nothing in the opinion charges, that the practice is so beset with conflict as to constitute a "problem." *See also* my separate opinion in *United States v. Blakey,* 1 M.J. 247, 248 (C.M.A. 1976).

As to the merits, I agree with the Court of Military Review's determination that Captain Wiley indisputably aligned himself with the accused; and, his examination of Grady, the government witness, "[d]emonstrated his loyalty" to the accused. Consequently, if Captain Wiley sacrificed an interest of any of his clients, it was the interest of Grady, not that of the accused. On the record, therefore, the situation is precisely opposite to that in *Evans,* where we could "say with assurance that important tactical decisions made by defense counsel were dictated by counsel's desire to further the interests of Evans' co-accused, not those of Evans."[2]

As I perceive no possibility of prejudice to the accused, I would affirm the decision of the Court of Military Review.

19. *See United States v. James,* 505 F.2d 898 (5th Cir. 1975), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); *United States v. Mackin,* 163 U.S.App.D.C. 427, 502 F.2d 429 (1974), *cert. denied,* 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *United States v. Rispo,* 460 F.2d 965 (3d Cir. 1972). As these cases make clear, the hearing will develop the essential facts, not mere allegations, for the trial court and appellate courts to evaluate. However, absent such a record, we must adhere to the principle enunciated in *Glasser v. United States, supra* 315 U.S. at 76, 62 S.Ct. at 467, that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

20. In adopting as mandatory this procedure of affirmative judicial involvement we decline appellate defense counsel's invitation to simply create a per se rule for evaluation. Both the needs of society and the protections of the Sixth Amendment are better served by informed and open litigation of such questions at the trial forum rather than resolution by either adherence to a rule automatically calling for reversal as suggested by counsel, or by conducting a method of analysis which fails to comport with the guidance of the Supreme Court concerning the protections of Sixth Amendment rights by examining the performance of counsel, in essence, in a vacuum. This latter method of resolution has the unfortunate result of placing "the defendant in the ironic position of having to 'prove what the disregard of his constitutional right has made it impossible for him to learn.' *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir. 1969)." *United States v. Grunden,* 25 U.S.C. M.A. 327, 330, 54 C.M.R. 1053, 1056, 2 M.J. 116, 120 (1977) (footnote omitted).

1. 1 M.J. 206 (1976).

2. *Id.* 1 M.J. at 208.