**UNITED STATES, Appellee,**

v.

**Private (E–2) Eric J. TESTMAN, SSN 119–40–8003, United States Army, Appellant.**

**Appeal of Private First Class (E–3) Juan G. GONZALEZ, SSN 564–94–5816, United States Army.**

**Appeal of Private (E–2) Tony NEWBURN, SSN 321–52–9696, United States Army.**

**CM 435929.**

U. S. Army Court of Military Review.

28 March 1979.

---

* *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973), at 3, footnote omitted.

Captain Buren R. Shields, III, JAGC, and Captain Larry C. Schafer, JAGC, were on the pleadings for appellant TESTMAN; Lieutenant Colonel John R. Thonock, JAGC, Captain Carlos A. Vallecillo, JAGC, and Captain William L. Finch, JAGC, were on the pleadings for appellant GONZALEZ; Colonel Robert B. Clarke, JAGC, Captain John E. Caulking, JAGC, and Captain Richard A. Pearson, JAGC, were on the pleadings for appellant NEWBURN.

1. This Court had held its decision in abeyance in expectation that a decision in *United States v. Crowley*, 3 M.J. 988 (A.C.M.R.1977) (en banc), *pet. denied*, 4 M.J. 165 (C.M.A.1977), *pet. granted*, 4 M.J. 171 (C.M.A.1977), *rev'd, mem.*, 4 M.J. 170 (C.M.A.1977), *pet. reconsider-*

Colonel Thomas H. Davis, JAGC, Major Michael B. Kennett, JAGC, and Captain Jack M. Hartman, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

JONES, Senior Judge:

The government has moved for reconsideration of the decision of 21 February 1979 in this case.[1] In that decision this Court set aside the findings of guilty and the sentence based upon the failure of the military judge to make a sufficient inquiry into the terms and conditions of the pretrial agreement as required by *United States v. Green*, 1 M.J. 453 (C.M.A.1976). *See United States v. King*, 3 M.J. 458 (C.M.A.1977).

■ The Government asserts that the guilty plea inquiry in this case is "factually indistinguishable" from the one sanctioned in *United States v. Hendon*, 6 M.J. 171 (C.M.A.1979). A comparison of the two inquiries indicates to us that the inquiry here is, if anything, more thorough and more in compliance with *King* and *Green* than the one in *Hendon*. We conclude that this Court's interpretation of *King* and *Green* as expressed in *Crowley* is consistent with the interpretation by the United States Court of Military Appeals as represented by *Hendon*. The guilty plea inquiry in this case was, therefore, adequate. Accordingly, the decision of this Court in this case dated 21 February 1979 is withdrawn and this decision is substituted therefor.

In our prior decision, we did not consider other errors assigned by counsel. We must consider them now.

■ We find no merit to appellant's contention that the military judge's general

*ation granted*, 4 M.J. 272 (C.M.A.1978), would clarify the uncertainty surrounding the issue of the military judge's inquiry into the pretrial agreement. Subsequently we determined to proceed with the review of this case without further delay.

policy regarding pleading and sentencing denied him his right to a fair trial. *Cf. United States v. Caruth*, 6 M.J. 184 (C.M.A. 1979).

■ Next we turn to the assertion that appellants were denied the effective assistance of counsel because their conflicting interests were represented by one counsel. The individual civilian counsel represented the three accused commencing at least as early as the Article 32, 10 U.S.C. § 832, investigation. The convening authority, recognizing the possibility of a conflict of interest, detailed separate military counsel for each accused but at trial they specifically excused their appointed counsel and stated they wanted only the single civilian counsel. The record is silent on whether they had ever consulted with their detailed counsel.

In *United States v. Evans*, 1 M.J. 206 (C.M.A.1975), the Court of Military Appeals found that a defense counsel detailed to represent five accused "subordinated possible advantages to [one] to the interests of the other[s] . . . ." The one accused did not receive the undivided loyalty and best judgment of his counsel. Such action by counsel denied him the effective assistance of counsel.

In *United States v. Blakey*, 1 M.J. 247 (C.M.A.1976), decided two months after *Evans*, the Court of Military Appeals finding no conflict of interest in the record, affirmed a decision wherein one defense counsel represented several accused. The Court expressed concern, however, at the continuing conflict of interest problems involved in multiple representation situations and suggested separate counsel be appointed for each accused. The Court quoted approvingly from the American Bar Association Standards for Criminal Justice, The Defense Function:

3.5 Conflict of interest.

(b) . . . The potential for conflict of interest [in] representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

Several months later in *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), the Court of Military Appeals took the foreseeable step of placing upon the trial judge the responsibility of determining whether a conflict of interest exists in multiple representation cases; the trial judge must appropriately advise the accused of the potential conflict of interest or division of loyalty, and elicit from him an informed decision as to his desires on continued representation. The Court did not prescribe a particular format for the inquiry but advanced as a model the procedure set forth in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975).

In the instant case, although no actual prejudice from a conflict of interest or division of loyalty was established on the record, the potential for such was obvious. The individual defense counsel negotiated guilty plea agreements with the convening authority for varying periods of confinement (2, 3, and 4 years) for the three accused. By the very act of negotiating for more than one accused, the counsel divided his loyalty and to some degree subordinated the interest of each to the benefit of the group as a whole.[2] This is true notwith-

2. Clearly the attractiveness (and, consequently, the "saleability") to the Government of any one of the agreements was substantially enhanced by the fact that a "package" of three agreements was being offered. Any breaking of the "package" could only imperil negotiations at a risk to the remaining defendants, thereby placing a premium on keeping all defendants in the "package." A "package" offer must be internally consistent, logical and equitable, frequently foregoing distinctions of relative diffi-culty of proof and focusing on relative culpability. Even the timing of offers of pretrial agreements can be utilized by the alert defense counsel who represents only one client in a multiple defendant case. If he represents the least culpable accused, he will attempt to submit his offer last so as to highlight the differing degrees of culpability and parlay the difference into the *best* agreement, not merely an equitable agreement, for his client. We do not condemn package offers, but they should be the

standing the possible fair and equitable nature of the agreements. The accused had to be informed of their right to separate, completely loyal counsel before they could make a knowing and intelligent waiver of that right. The military judge's inquiry here did not meet that requirement. *United States v. Davis, supra.*[3] Accordingly corrective action is required.

The findings of guilty and the sentence as to each accused is set aside. A rehearing may be ordered by the same or a different convening authority.

Judge DeFORD and Judge LEWIS concur.

product of the best efforts of counsel with individual loyalty to each of the individuals who would be parties to the agreement or the right to such divided loyalty must be waived on an informed basis consistent with *Davis, supra.*

These same considerations apply to a single counsel representing multiple defendants during sentencing. Where he highlights the lesser culpability of one, he inferentially stresses the greater culpability of another. Where he emphasizes the good prior record of one, he inferentially stresses the lack of a similarly good record of the other. To fail to highlight lesser culpability or good record, however, is an abandonment of that client in favor of the others. We urge both the trial bar and bench to demonstrate greater sensitivity to potential conflict and loyalty issues.

3. We recognize that this case was tried six months before the decision in *United States v.*

*Davis,* 3 M.J. 430 (C.M.A.1977), which placed the specific requirement on the military judge to conduct an inquiry into the multiple representation question. Twenty years earlier, however, the Court of Military Appeals stated in *United States v. Thornton,* 8 U.S.C.M.A. 57, 23 C.M.R. 281 (1957):

". . . Good practice demands that such disclosures [concerning conflict of interest of counsel] be made a matter of record and brought to the attention of the law officer prior to arraignment so that the latter may assure himself the accused is fully cognizant of the limitations and restrictions placed upon his counsel. With the benefit of this information an accused can make an enlightened election whether to retain appointed counsel or seek a replacement." (23 C.M.R. at 285).