# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

### UNITED STATES OF AMERICA

v.

### DWAYNE L. DOCTOR
### MASTER-AT-ARMS FIRST CLASS (E-6), U.S. NAVY

### NMCCA 201300187
### GENERAL COURT-MARTIAL

**Sentence Adjudged**: 25 January 2013.
**Military Judge**: CAPT John K. Waits, JAGC, USN.
**Convening Authority**: Commander, Navy Region Southeast, Naval Air Station, Jacksonville, FL.
**Staff Judge Advocate's Recommendation**: CDR M.C. Holifield, JAGC, USN.
**For Appellant**: LT Jared A. Hernandez, JAGC, USN.
**For Appellee**: Maj David N. Roberts, USMC; LT Ian D. MacLean, JAGC, USN.

**27 March 2014**

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of violating a lawful general order (sexual harassment), making a false official statement, wrongful sexual contact, and indecent exposure in violation of Articles 92, 107, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 920. The members acquitted the appellant of operating a vehicle while drunk and of communicating indecent language. The members

sentenced the appellant to confinement for ten months, forfeiture of all pay and allowances, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises thirteen assignments of error (AOE).[1] After careful consideration of the parties' pleadings and the

---

[1] The appellant raises the following AOEs, all pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982):

I. Is the evidence factually and legally sufficient to affirm the appellant's conviction?

II. Did the military judge err when he failed to declare a mistrial after polygraph testimony was heard by the members in direct violation of Military Rule of Evidence 707?

III. Did the military judge err when he allowed records of old nonjudicial punishments to be entered into evidence by the Government during presentencing in violation of JAGMAN 0141?

IV. Did the military judge err when he allowed trial counsel to question witnesses during presentencing about specific details related to a 21-year-old court-martial conviction that occurred when the appellant was eighteen years old?

V. Did the military judge err when he failed to grant the defense counsel's challenge for cause against CAPT O despite the liberal grant mandate?

VI. Was the appellant's bad-conduct discharge inappropriately severe?

VII. Was the military trial defense counsel ineffective when she failed to disclose an apparent conflict of interest until the week of trial and then, post-trial, joined an advocacy group dedicated to "exposing dysfunction" in military sexual assault cases?

VIII. Did the military judge err by failing to *sua sponte*, dismiss this case for unlawful command influence due to remarks made by the President of the United States and other senior civilian leaders that created "a shadow of prosecute" [sic] in the armed forces?

IX. Did the CA commit legal error by taking action only four days after receiving clemency matters in this case? The CA could not have reviewed the 922-page record of trial in that time period.

X. Was the appellant denied due process when NCIS investigators tainted MA3 A's statement and testimony conducting a faulty investigation that resulted in a fundamentally unfair court-martial?

XI. Did the military judge err when he refused to instruct on the lesser included offense of assault when the members could have found that no specific intent existed?
XII. Did the military judge err by not declaring a mistrial when the members brought out an inappropriately filled out verdict form?

2

record of trial, we conclude that the findings are correct in law and fact, but we set aside the sentence because the appellant was prejudiced in presentencing when the military judge improperly admitted a nonjudicial punishment record into evidence.

## Background

On 1 March 2012, the appellant and Master-at-Arms Third Class (MA3) JA, who worked together at the Naval Station Mayport Security Department, made plans to go to a bar near MA3 JA's off-base apartment that evening. Additionally, the two agreed the appellant would spend the night and sleep on the couch at the apartment MA3 JA shared with his wife, so the appellant would not have to drive home. At approximately 2200, as planned, the appellant picked MA3 JA up at his apartment and the two drove to a nearby bar where they each consumed several alcoholic beverages over the next few hours. At approximately 0130 on 2 March 13, the appellant drove MA3 JA back to his apartment. MA3 JA testified that during this short drive the appellant made several comments regarding their respective penis sizes. MA3 JA testified that he interpreted the appellant's comments as a request for "sexual favors" which he rejected. MA3 JA testified that when they reached the apartment building parking lot, the appellant unzipped his pants and exposed his penis and then asked MA3 JA to do the same. MA3 JA stated he immediately left the vehicle and went into his apartment. The appellant followed MA3 JA into the apartment. MA3 JA testified he still intended to let the appellant sleep on the couch based on their prior plans and because he didn't want the appellant to drive home after drinking.

MA3 JA testified that upon entering the apartment, he went to the bedroom and told his wife what had just happened. MA3 JA then went back to the living area, prepared some food, and sat on the living room couch to eat and watch television. The appellant sat on the couch as well and, according to MA3 JA, the appellant again asked MA3 JA to expose himself and solicited a threesome with MA3 JA and his wife. MA3 JA testified that the appellant also reached over with both hands and touched his inner thigh and shoulder. MA3 JA testified he immediately got

---

XIII. Did the military judge abuse his discretion under Military Rule of Evidence 611 when he failed to recess the court-martial at an appropriate time requiring the members to remain, deliberate, and render a verdict at midnight at the end of the business week?

up and told the appellant to leave. MA3 JA's wife testified she overheard the appellant making sexual comments and that she went to the hallway so she could see what was going on. She testified she then saw the appellant place his hands on MA3 JA's thigh and shoulder and saw MA3 JA get up and tell the appellant to leave the apartment.

MA3 JA stated he escorted the appellant to the front door and out of the apartment, where the appellant grabbed MA3 JA's genitals through his clothing. MA3 JA testified he removed the appellant's hand and told him to stop and the appellant responded by grabbing MA3 JA's genitals a second time. MA3 JA testified he again removed the appellant's hand and then went back inside his apartment and locked the door.

Once back in his apartment, MA3 JA telephoned a shipmate and eventually called the security watch commander to report the incident. The watch commander picked MA3 JA up at his apartment and brought him to the Naval Station Mayport Security building. The Naval Criminal Investigative Service (NCIS) was notified and Special Agent FL assumed cognizance of the investigation. As part of the investigation, Special Agent FL recorded a controlled phone call between MA3 JA and the appellant.[2] During this call, the appellant made several admissions regarding grabbing MA3 JA's genitals, soliciting a threesome with MA3 JA and his wife, and exposing himself. Additionally, MA3 JA and the appellant exchanged several text messages in which the appellant admitting grabbing MA3 JA's genitals. The appellant denied exposing himself or touching MA3 JA's genitals during an interview with Special Agent FL and in the written statement the appellant provided to NCIS.

At trial the defense presented no evidence on the merits. However, the trial defense counsel argued that the sexual talk and physical interaction between the appellant and MA3 JA was consensual, and that MA3 JA subsequently changed his story to placate his wife who was upset by the interactions she observed between her husband and the appellant.

Further facts are developed below as necessary.

**Legal and Factual Sufficiency**

---

[2] The appellant did not answer any of the three phone calls placed by MA3 JA, but did return a call to MA3 JA. NCIS recorded the conversation from this phone call.

We review questions of legal and factual sufficiency *de novo*. *United States v. Winckelmann*, 70 M.J. 403, 406 (C.A.A.F. 2011); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2001). The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offense, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses. *Id*. at 325. In this case we find in the affirmative as to both.

In this assignment of error, the appellant does not point to a specific deficiency of proof, but rather asserts MA3 JA's testimony was impeached multiple times and was insufficient to prove the charges beyond a reasonable doubt. The term "reasonable doubt" does not mean that the evidence must be free of any conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). The members may "believe one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979). Conducting our own legal and factual sufficiency analysis, we disagree with the appellant's assertion. MA3 JA's testimony clearly established:

> (1) That the appellant indecently exposed his genitals while he and MA3 JA were sitting in the appellant's parked vehicle;
>
> (2) That the appellant repeatedly sexually harassed MA3 JA by asking him to expose his penis and engage in other sexual activity; and,
>
> (3) That the appellant grabbed MA3 JA's genitals twice after MA3 JA escorted the appellant from his apartment.

Additionally, much of MA3 JA's testimony was corroborated by his wife's testimony and by the appellant's admissions made during the controlled phone call and in several post incident text messages he sent to MA3 JA. The appellant's statements during the controlled phone call also provided the factual basis to prove the false official statement.

After reviewing the record, we find that a rational trier of fact could have found the essential elements of the offenses

5

were proven beyond a reasonable doubt, and we are ourselves convinced beyond a reasonable doubt as to the appellant's guilt.

## Motion for Mistrial

At trial, the Government introduced into evidence a video recording of the NCIS case agent's interview of the appellant. Record at 519; Prosecution Exhibit 11. The recording was played for the members. *Id.* To comply with MILITARY RULE OF EVIDENCE 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), the parties agreed to remove all references made during the interview to a polygraph examination. Record at 524-31. Despite their best efforts, near the end of the recording the members heard the case agent's request that the appellant take a polygraph examination and his agreement. Shortly thereafter, the military judge called an Article 39(a), UCMJ, session to address this disclosure to the members. At this session, the trial defense counsel moved for a mistrial which the military judge denied. The military judge instead chose to provide a curative instruction during which he advised the members to "completely disregard" any reference to a polygraph examination and to "cast it out of your minds as if it had never been said." *Id*. at 566. All members indicated they could follow this instruction. *Id.*

A military judge's denial of a motion for a mistrial is reviewed for a clear abuse of discretion. *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003). A mistrial is a drastic remedy to be used only sparingly to prevent manifest injustice. *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990). A mistrial is appropriate only when "circumstances arise that cast substantial doubt upon the fairness or impartiality of the trial." *United States v. Barron*, 52 M.J. 1, 4 (C.A.A.F. 1999) (citation and internal quotation marks omitted). "A curative instruction is the 'preferred' remedy for correcting error when the court members have heard inadmissible evidence, as long as the instruction is adequate to avoid prejudice to the accused." *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citation omitted).

In this instance we find the military judge did not abuse his discretion in denying the defense request for a mistrial. The military judge's curative instruction in this instance was sufficient to avoid prejudice to the appellant.

## Challenge Against Captain O

Following group and individual *voir dire,* the trial defense counsel made challenges for cause against Captain (CAPT) O, Lieutenant Commander (LCDR) W, LCDR S, and LCDR D.[3] Record at 208. The military judge granted the challenges of LCDR W and LCDR S, but denied the challenges of CAPT O and LCDR D. The appellant then exercised his peremptory challenge against LCDR D. *Id.* at 225.

The appellant asserts that the military judge abused his discretion in denying the defense challenge for cause against CAPT O. The trial defense counsel challenged CAPT O for implied bias based on CAPT O's lack of "attentiveness and his demeanor in court." *Id. a*t 210. Counsel further explained CAPT O failed to update his member's questionnaire to reflect he had served as a court-martial member the prior month. Concerning CAPT O's demeanor counsel stated, "it's not that he (CAPT O) was outright hostile, but it just appeared to us that he was not paying the appropriate amount of attention to the response to the (*voir dire)* questions . . . ." *Id.*

An appellant is entitled to trial by impartial members, *United States v. Townsend,* 65 M.J. 460, 463 (C.A.A.F. 2008), and RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) provides that a member shall be excused when it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." Members may be challenged for both actual and implied bias. *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007). Implied bias exists when, despite a disclaimer, most people in the same position as the court member would be prejudiced. *United States v. Napolitano,* 53 M.J. 162, 167 (C.A.A.F. 2000); *United States v. Warden,* 51 M.J. 78, 81 (C.A.A.F. 1999). Challenges for implied bias are viewed objectively through the eyes of the public, "'focusing on the appearance of fairness.'" *United States v. Bragg,* 66 M.J. 325, 326 (C.A.A.F. 2008) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)). Military judges are enjoined to liberally grant defense challenges for cause. *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006).

"Although we review issues of implied bias for abuse of discretion, the objective nature of the inquiry dictates that we accord 'a somewhat less deferential standard' . . . ." *Townsend*, 65 M.J. at 463 (quoting *United States v. Armstrong*, 54 M.J. 51, 54 (C.A.A.F. 2000)). "A military judge who addresses

---

[3] The Government also challenged LCDR W for cause. Record at 208.

implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not." *Clay,* 64 M.J. at 277.

The military judge specifically disagreed with trial defense counsel's contention that CAPT O was inattentive and did not show proper demeanor during *voir dire.* Record at 212. Furthermore, in applying the liberal grant mandate, the military judge stated, "that a reasonable member of the public would not have substantial doubt as to the legality, fairness or impartiality of the proceedings having just witnessed the *voir dire* of [CAPT O]." *Id.* at 213.

Viewing the record objectively, we find that a member of the public would not have substantial doubt that it was fair for CAPT O to sit as a member. *Bragg,* 66 M.J. at 327. Finding no clear abuse of discretion by the military judge in applying the liberal grant mandate and no objective reason to question CAPT O's fairness and impartiality, we conclude that the military judge did not err in denying the appellant's challenge against him for implied bias.

### Ineffective Assistance of Counsel

The appellant next contends that his military defense counsel was ineffective because:

(1) She failed to disclose, until shortly before trial, that she previously advised adverse action against the appellant in a separate matter;

(2) Soon after the trial she became Executive Director of "Protect our Defenders," an advocacy group frequently critical of the military on sexual assault;

(3) She failed to prevent polygraph evidence from being heard by the members; and,

(4) She did not adequately prepare for presentencing.

We disagree and find that the appellant received full and effective representation by his civilian defense counsel and his detailed military defense counsel.

The test for determining ineffective assistance of counsel has two prongs: deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To meet the

8

deficiency prong, the appellant must show his defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To show prejudice, the appellant must demonstrate that any errors made by the defense counsel were so serious that they deprived him of a fair trial. *Id.; United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). The proper standard for attorney performance is that of reasonably effective assistance. *Strickland*, 466 U.S. at 687. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Scott*, 24 M.J. at 188. In order to show ineffective assistance, the appellant must surmount a very high hurdle. *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997).

Military defense counsel's potential conflict of interest in representing the appellant was thoroughly addressed by the military judge. Record at 20-25. Following a full explanation of the potential conflict and the military judge's reiteration of counsel rights to the appellant, the appellant stated, "Sir, I feel there's no conflict pertaining to the issue that happened aboard the USS IWO JIMA. I believe that Lieutenant [M] is a very professional attorney for the United States Navy, and I will continue to want to have her represent me at this court-martial as the proceedings go forward." *Id.* at 25. "An accused may waive his right to conflict-free counsel." *United States v. Lee,* 66 M.J. 387, 388 (C.A.A.F. 2008) (citing *United States v. Davis,* 3 M.J. 430, 433 n.16 (C.M.A. 1977)). Such waivers must be voluntary, and they must be "'knowing intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Davis*, 3 M.J. at 433 n.16 (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)). Here the appellant assertion that he wished to have Lieutenant M continue to represent him waived any issue regarding his counsel's potential conflict.

The appellant provides no evidence to support his claim that his military defense counsel did not zealously represent him, regardless of any subsequent employment. While the military judge expressed dissatisfaction regarding presentencing preparation, he did so outside the presence of members and his comments were focused primarily on lack of communication between the parties and were directed equally toward the Government counsel and the defense counsel. Record at 774-75. The defense prepared and submitted a 75-page package in extenuation and mitigation and presented three witnesses who testified to the appellant's good military character. Moreover, Lieutenant M

9

submitted an extensive post-trial clemency package on behalf of the appellant and urged the CA to set aside the findings based on legal errors in the court-martial proceedings or in the alternative to grant sentence relief.  The failure to prevent the members from hearing a single reference to a polygraph examination during the course of the appellant's nearly three-hour interview at NCIS does not rise to the level of ineffective assistance of counsel.  Any potential prejudice in this regard was quickly rendered moot by the military judge's timely curative instruction.

In sum, the appellant's ineffective assistance of counsel assertions constitute nothing more than bare allegations and speculation concerning his military defense counsel's claimed errors and omissions.  The conclusion the trial defense counsel team rendered adequate assistance and exercised reasonable professional judgment is further supported by the vigorous pretrial, trial, sentencing and post-trial representation they provided to the appellant.  In light of the evidence in the record and the appellate filings, we conclude the appellant has demonstrated neither deficient performance nor prejudice.

### Unlawful Command Influence

The appellant also avers, for the first time on appeal, that his court-martial was infected with unlawful command influence (UCI) because comments from senior civilian officials have forced the armed forces to prosecute sexual assault cases and convict at all cost.  We review allegations of UCI *de novo*. *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).  Article 37(a), UCMJ, states, "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or reviewing authority with respect to his judicial acts."  The appellant has the initial burden of producing sufficient evidence to raise unlawful command influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994).  This threshold is low, but it must be more than "a bare allegation or mere speculation." *United States v. Johnston*, 39 M.J. 242, 244 (C.M.A. 1994) (citation omitted).

The record before us is entirely devoid of facts that, if true, constitute UCI.  Moreover, we find no indication whatsoever that the proceedings were unfair. *Stombaugh*, 40 M.J. at 213.  The appellant has failed to meet his initial burden of production on UCI and therefore we decline to grant relief.

10

## Lesser Included Offense

The appellant also contends the military judge erred by not instructing the members on the lesser included offense (LIO) of assault consummated by battery.

Questions of law pertaining to the military judge's instructions are reviewed *de novo*. *United States v. Schroder*, 65 M.J. 49, 54 (C.A.A.F. 2007). The military judge has a *sua sponte* duty to instruct the members on any and all lesser included offenses reasonably raised by the evidence admitted at trial. *United States v. Miergrimado*, 66 M.J. 34, 36 (C.A.A.F. 2008); see *generally* R.C.M. 920(e)(2).

Concerning the LIO of battery, the military judge found it was not raised by the evidence, concluding, "all we're talking about is grabbing of the crotch. So it's either a sexual assault or it's, you know, not." Record at 603. We agree with the military judge's conclusion that the facts did not reasonably raise the offense of assault consummated by battery. The appellant engaged in repeated sexual advances toward MA3 JA throughout the evening culminating in wrongful sexual contact when the appellant grabbed MA3 JA's genitals through his clothing. No evidence was raised to suggest the appellant was not acting to satisfy his sexual desire when this occurred and therefore the LIO of battery was not reasonably raised by the evidence.

## Admissibility of NJP Records

The appellant contends that the military judge erred during the presentencing proceedings by admitting records of a nonjudicial punishment (NJP) imposed during a prior enlistment. If otherwise admissible, records of NJP may be introduced into evidence provided the records reflect offenses committed during the current enlistment or period of service of the accused. Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F, § 0141 (26 Jun 2012). We conclude, that the NJP documented in PE 15,[4] which was awarded eight years prior

---

[4] PE 15 is a seven-page document concerning NJP imposed on the appellant for impersonating a law enforcement officer on two occasions when he stopped motorists both on and off military installations using blue strobe lights on the dash of his personal vehicle. At the time the appellant was assigned to the Transient Personnel Unit and had no law enforcement duties. The document package consisted of a three-page punitive letter of reprimand from the Commanding Officer (CO), Naval Air Station (NAS) Jacksonville to the appellant, the report and disposition of offense(s) documenting the NJP charges and specifications and imposed punishment, and the CO NAS

and during the appellant's previous enlistment, failed to meet this definition, and was admitted into evidence during the presentencing phase contrary to the policy set forth in JAGMAN § 0141.

The trial defense counsel made a timely objection to the admission of PE 15; however, the objection was based on the Government's failure to provide the document package in discovery. Record at 769. The military judge did not expressly rule on the objection, but said he would provide defense as much time as they needed to review the Government's presentencing documents. *Id.* at 777. The defense requested, and the military judge granted, a thirty-minute recess to allow the defense time to review the documents. *Id.* Following their review, trial defense counsel raised no further objection to PE 15 and it was admitted into evidence. *Id.* at 794. Given this circumstance, we will consider the issue forfeited unless we find "plain error." R.C.M. 801(g); Mil. R. Evid. 103(a)(1) and (d).

To constitute "plain error," an error must in fact exist, that error must be plain or obvious, and the error must materially prejudice a substantial right of the appellant. *United States v. Lepage*, 59 M.J. 659, 660 (N.M.Ct.Crim.App. 2003). While it was obviously error for the military judge to admit this NJP into evidence in noncompliance with the policy constraints set forth by the Judge Advocate General, whether it had a "significant effect on the sentence" is determined on a case-by-case basis. *United States v. Wrenn*, 36 M.J. 1188, 1193 (N.M.C.M.R. 1993).

During the presentencing proceedings, the trial counsel questioned each of the defense's three character witnesses about details of the appellant's conduct reflected in PE 15. Record at 835, 842, and 855. Additionally, following the character witness testimony, the military judge specifically advised the members that they may consider the appellant's actions in making unlawful traffic stops "for its substantive nature, that is, in aggravation in sentencing". *Id.* at 860-61. Finally, the trial counsel in his sentencing argument again referenced PE 15 and the appellant's underlying conduct for the NJP, stating, "[y]ou've seen his prior service, evidence of that letter of reprimand, and you are going to be able to take it back with you and review it where he was pulling people over in his personally operated vehicle on and off base impersonating a police officer. Look at the conduct of that offense. Even then the accused

Jacksonville forwarding endorsement to the Chief of Naval Personnel (PERS-313D) to include the information in the appellant's official service record.

believed he was above the law." *Id.* at 897. Considering these factors, we find there was an appreciable risk that the court members gave significant weight to the improperly admitted exhibit in determining a sentence. Therefore, we find the military judge committed plain error in admitting PE 15. *See United States v. Dyke*, 16 M.J. 426, 427 (C.M.A. 1983).

## Remaining Assignments of Error

Having reviewed the record, we find assignments of error IX, X, XII, and XIII raised by the appellant to be without merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

## Conclusion

The findings are affirmed. Here we decline to reassess the sentence because we cannot confidently "discern the extent of the error's effect on the sentencing authority's decision." *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991). Therefore, the sentence is set aside, and the record is returned to the Judge Advocate General of the Navy for transmission to an appropriate CA who may order a rehearing on the sentence.[5] Following post-trial processing the record will be returned to the Court for completion of appellate review. *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A. 1989).

Senior Judge MITCHELL and Judge JAMISON concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[5] Due to our action relative to the sentence, AOEs IV and VI, relating to sentence severity and presentencing questions about the appellant's 21-year-old court-martial conviction, are presently moot.

13