UNITED STATES, Appellee

v.

Jonathan E. LEE, Captain
U.S. Marine Corps, Appellant

No. 07-0725

Crim. App. No. 200600543

United States Court of Appeals for the Armed Forces

Argued March 11, 2008

Decided June 13, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined. RYAN, J., filed a separate dissenting opinion, in which STUCKY, J., joined.


Counsel


For Appellant: Eugene R. Fidell, Esq. (argued); Matthew S. Freedus, Esq., Brent C. Harvey, Esq., and Lieutenant Brian D. Korn, JAGC, USN (on brief).


For Appellee: Lieutenant Derek D. Butler, JAGC, USN (argued); Commander Paul C. LeBlanc, JAGC, USN (on brief); Lieutenant Justin E. Dunlap, JAGC, USN.


Military Judges: S. F. Day and J. M. Sankey


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

Appellant entered mixed pleas before a military judge sitting as a general court-martial. After a trial on the contested offenses, Appellant was convicted of three specifications of burglary, conduct unbecoming of an officer and a gentleman, three specifications of fraternization, and five specifications of indecent assault, all in violation of Articles 129, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 929, 933, 934 (2000), respectively. The adjudged and approved sentence included a dismissal, confinement for three years and forfeiture of all pay and allowances. The United States Navy-Marine Corps Court of Criminal Appeals dismissed the conduct unbecoming charge and the specification thereunder, and one specification of indecent assault. United States v. Lee, No. NMCCA 200600543, 2007 CCA LEXIS 233, at *24, 2007 WL 1890683, at *8 (N-M. Ct. Crim. App. June 26, 2007). After reassessing in light of that action, the court affirmed the sentence as approved by the convening authority. Id. at *24, 2007 WL 1890683, at *8. We granted review of Appellant's assigned issue: whether his detailed defense counsel's failure to disclose a conflict of interest resulted in an uninformed selection of counsel.

The parties have briefed and argued the case from the perspective of a declaration submitted by Appellant in the court

below.  In that declaration Appellant states that during the representation, detailed counsel informed him that he would "be wrapping up his defense cases and that his new duties would entail prosecuting 'minor offenses.'"  Appellant suggests that he acceded to this arrangement because his detailed counsel told him there was no conflict of interest.  Appellant also states that after his trial, he learned that his detailed counsel had actually been working as a prosecutor on another serious case while simultaneously representing him.  Moreover, in this other case, his detailed counsel was working for the same trial counsel prosecuting his case.  In support of his argument, Appellant references the book, Warlord: No Better Friend, No Worse Enemy (2006), by Ilario Pantano with Malcolm McConnell, recounting Pantano's court-martial in detail.

The Government responds that even if Appellant's allegations are correct, Appellant has failed to show any adverse effect on detailed counsel's performance.  As a result, the Government concludes, Appellant was not deprived of counsel for the purposes of the Sixth Amendment.  In addition, during all relevant times, Appellant was also represented by civilian counsel of his choice, and he has made no claim of ineffectiveness as to that counsel's performance.

ANALYSIS

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; see also United States v. Cain, 59 M.J. 285, 294 (C.A.A.F. 2004). Case law identifies several elements within this right, as applied in the civilian context. One element of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). Further, counsel provided to or retained by the accused must provide "reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984). Third, "[w]here a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). Finally, it follows that where assistance of counsel has been denied entirely, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." Mickens v. Taylor, 535 U.S. 162, 166 (2001); see generally Powell v. Alabama, 287 U.S. 45 (1932) (judgments reversed in capital cases where trial court denied defendants reasonable time to secure counsel).

An accused may waive his right to conflict-free counsel. United States v. Davis, 3 M.J. 430, 433 n.16 (C.M.A. 1977).

4

However, waivers must be voluntary, and they must be "'knowing intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" Id. (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). Courts will "'indulge every reasonable presumption against the waiver'" of this right. Id. (citations omitted).

The concerns attendant to counsel performing prosecutorial duties while simultaneously representing an accused person at court-martial are reflected in a longstanding opinion from the Office of Legal Counsel within the Department of Justice, which states among other things, that "it is considered unethical for an active prosecutor to represent criminal defendants in his or her own or another jurisdiction," based inter alia on the "'subliminal or concealed' influences on the attorney's loyalty." 1 Op. Off. Legal Counsel 110, 112 (1977). These same concerns are reflected within two opinions by the American Bar Association (ABA) addressing military counsel. In an opinion addressing the propriety of a military legal office providing both trial counsel and defense counsel in the same case the ABA stated:

> Depending on whether a lawyer is cast in a defense or prosecutorial role, he may be required to frame and advocate interpretations of established rules of law or procedure that are, or seem to be, poles apart. He may be required to criticize police actions in one case, then turn about to defend the same or similar actions in a subsequent case where the facts may be,

> or seem to be, the same.  He will deal frequently with the same investigative or police personnel; he may appear before the same [judges].  In the course of this, the temptations may be great to mute the force of advocacy, or just the handling of cases in subtle ways.

ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1235

(1972).  A later ABA opinion states:

> The Uniform Code of Military Justice (specifically [Article 27, UCMJ] 10 U.S.C. § 827) and military court opinions issued thereunder, as well as traditional ethical concepts, have long recognized that a lawyer should not serve as prosecutor and defense counsel, investigator and defense counsel, defense counsel and judge, or in any other combination of conflicting roles in the same case.  This is because a basic tenet of an adversary system of justice is that a lawyer should have undivided loyalty to his client and because a fair system of justice requires that there be no appearance of divided loyalty.

ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1474

(1982).

In contrast to the apparent substantive clarity suggested by the text above, case law varies on whether the simultaneous representation of the United States and a defendant results in per se prejudice or whether the defendant must at least show that the conflict adversely affected his counsel's performance. Beaver v. Thompson, 93 F.3d 1186, 1193 (4th Cir. 1996) (per se prejudice rule rejected in case where defense counsel was part-time assistant prosecutor in neighboring county); Garcia v. Bunnell, 33 F.3d 1193, 1198 & n.5 (9th Cir. 1994) (in case in which defendant claimed defense counsel had simultaneously

6

undertaken duties as a prosecutor, standard was, "'a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice,'" but suggested that had defendant timely objected, it would have obviated need for such a showing) (citation omitted); accord Goodson v. Peyton, 351 F.2d 905, 909 (4th Cir. 1965) (court-appointed counsel was the Commonwealth's Attorney for neighboring county).

Not surprisingly, there are also few cases reaching this Court on the issue of supervisory conflicts. United States v. Nicholson, 15 M.J. 436, 438 (C.M.A. 1983) (rejecting per se prejudice rule where trial counsel prepared fitness reports on defense counsel); accord United States v. Hubbard, 20 C.M.A. 482, 484, 43 C.M.R. 322, 324 (1971) (where trial counsel was endorsing official for defense counsel personnel evaluations).

## NEED FOR REMAND IN THIS CASE

Appellant's declaration implicates three related questions. First, when, and under what circumstances, did defense counsel serve as a trial counsel, and did military counsel labor under a conflict of interest in representing Appellant under such circumstances? Appellant indicates that he was aware that his counsel would, at some point in time, be working as a prosecutor. However, it is not clear whether Appellant was told (or whether he understood) these prosecution duties would be

7

undertaken during the defense representation or after it terminated.

Second, if defense counsel had in fact begun duties as a prosecutor, was defense counsel subject to the supervision of trial counsel in Appellant's case?  Here, Appellant points to an excerpt from the Pantano book, "facts" that are clearly not in the record of trial and that have not been subject to adversarial adjudication.

Third, whatever the underlying facts, did Appellant make an informed decision to waive any conflict of interest based on the actual facts at the time he consented to further representation?

Appellant's declaration suggests that he may have had some knowledge of his detailed counsel's potential conflict, if any. In the event Appellant did not knowingly waive a conflict of interest, the question remains as to what showing must be made for an accused to prevail on an issue of a conflicted counsel.

Based on the foregoing, it is necessary for us to remand this case for further findings and conclusions of law.

### DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority to order a factfinding hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37

C.M.R. 411 (1967).  In conducting such a hearing, the military judge should be guided, but not constrained, by the questions contained in the Appendix to this opinion in gathering the facts necessary to reach the conclusions of law required to address the issues raised in this opinion.  Afterwards, the case shall be forwarded and reviewed in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (2000).

APPENDIX

The following factual issues are in need of resolution:

1.  What are the circumstances surrounding the assignment of detailed counsel as a trial counsel, including the date such duties were to begin?

2.  What consideration was given to the fact that counsel still had active defense cases?

3.  What "need" arose for the reassignment?

4.  What was the full scope of detailed counsel's actions as a trial counsel during counsel's representation of the accused?

5.  Was there, in fact, a supervisory relationship between trial counsel and detailed counsel during counsel's representation of the accused?

6.  What was the exact nature of any disclosures made to the accused?

7.  What was the accused's understanding regarding these disclosures?

8.  What was civilian counsel's role in the matter?

9.  What effects on the representation can the accused point to resulting from any claimed conflicts of interest on the part of his detailed defense counsel?

RYAN, Judge, with whom STUCKY, Judge, joins (dissenting):

This Court granted review of the decision of the United States Navy-Marine Corps Court of Criminal Appeals on one issue raised by Appellant: "Whether [detailed counsel's] failure to disclose his conflict of interest resulted in an uninformed and invalid election of counsel." Rather than answer this question, which is directly controlled by Supreme Court precedent and not an open issue, Cuyler v. Sullivan, 446 U.S. 335, 350 (1980) ("[T]o demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."), and Strickland v. Washington, 466 U.S. 668, 692 (1984) (holding that defendant must demonstrate both that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance to establish a Sixth Amendment violation), the majority remands the case for additional factfinding on questions related to the alleged conflict and Appellant's knowing waiver, if any, of any such conflict.

Remand is unwarranted under the facts of this case. Appellant fails to show, or even allege, prejudice or deficient performance by either the potentially conflicted detailed

counsel or his privately retained civilian counsel.[1]  Instead,

Appellant argued structural error resulting from an alleged

violation of the Sixth Amendment right to counsel of choice.

Based on this strategy, Appellant denied that any showing of

deficient performance was necessary.[2]

That is simply not the law.  The Sixth Amendment grants

Appellant the right to "Assistance of Counsel for his defence."

U.S. Const. amend. VI.  Two aspects of this right are the right

to effective assistance of counsel, Strickland, 466 U.S. at 686,

and the right to counsel of choice with certain limitations,

United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 151–52

(2006).  They are different and separate aspects of the same

right, and alleged deprivations of each warrant distinct and

disparate analyses.

It is well settled that conflicts of interest are analyzed

under the "ineffective assistance of counsel" rubric, which

---

[1] The performance of the civilian counsel is relevant for two reasons.  First, "[w]here an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole."  United States v. Boone, 42 M.J. 308, 313 (C.A.A.F. 1995).  Without evidence that Appellant's defense team, including both Appellant's civilian counsel and detailed counsel, acted deficiently, Appellant cannot establish prejudice.  Second, the impact of any deficient performance by detailed counsel would be mitigated by the fact that civilian counsel acted as lead counsel throughout Appellant's trial.

[2] At oral argument, counsel for Appellant admitted, "We have not made a claim, because we do not need to make a claim, that there was any deficiency in [detailed counsel's] work."

requires a showing of prejudice and deficient performance, rather than as "erroneous denial of counsel of choice," which constitutes structural error. Compare Cuyler, 446 U.S. at 348-50 (setting forth test for ineffective assistance of counsel where a conflict of interest is alleged), and Mickens v. Taylor, 535 U.S. 162, 171-73 (2002) (applying ineffective assistance of counsel analysis in light of conflict of interest), with Gonzalez-Lopez, 548 U.S. at 144-48 (analyzing the court's erroneous refusal to permit hired attorney to represent defendant as denial of counsel of choice).

Appellant nonetheless argues that if he had been fully informed of the detailed counsel's potential conflict of interest, he would have requested new counsel. Therefore, Appellant argues, detailed counsel's failure to disclose the conflict rendered Appellant's decision "uninformed and invalid" and violated his right to choice of counsel.

No one, of course, would choose a conflicted or otherwise ineffective attorney, and under this logic every instance of conflict or deficient performance would constitute structural error and warrant reversal. But it has never been the case that the right to counsel of choice is violated by conflicted or ineffective counsel. Violations of the Sixth Amendment right to counsel of choice, and the attendant structural error and automatic reversal, occur when there is an erroneous deprivation

of a defendant's request for the "counsel he believes to be best," the "counsel of his choosing." Gonzalez-Lopez, 548 U.S. at 146 & n.2 (holding that a trial court's erroneous denial of the defendant's counsel's application for admission pro hac vice violated the defendant's Sixth Amendment right to choice of counsel and amounted to a structural error, requiring no showing of prejudice).

This case presents different circumstances. At Appellant's arraignment, the military judge informed Appellant of his counsel rights and confirmed that Appellant understood those rights. Appellant elected to be represented by both the detailed counsel and his civilian attorney and was so represented at trial. Appellant admits that he was represented by his counsel of choice, but argues that Gonzalez-Lopez supports the argument that detailed counsel's failure to sufficiently disclose a potential conflict of interest constitutes a violation of the right to choice of counsel.

Such an extension of Gonzales-Lopez is unsupported by precedent, unwarranted by any language in Gonzales-Lopez, and unnecessary. The Sixth Amendment already protects the defendant's right to counsel who owes the defendant "a duty of loyalty, a duty to avoid conflicts of interest." Strickland, 466 U.S. at 688. The Supreme Court explicitly provided for this type of case, holding that prejudice may be presumed, when

4

defendant's counsel is burdened by an "actual conflict of interest." Id. at 692. But to establish an actual conflict of interest, the defendant must demonstrate that his "counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Id. (quoting Cuyler, 446 U.S. at 348, 350) (emphasis added). The Supreme Court in no way suggested in its Gonzalez-Lopez holding either that it intended to eviscerate its established conflicts of interest jurisprudence or that the right to counsel of choice is violated where a defendant gets the lawyer he asked for, but post hoc, it is clear he either should have or would have chosen differently.

The Supreme Court's opinion in Mickens reaffirmed that Cuyler and Strickland remain the appropriate tests for conflicts of interest and that such conflicts do not constitute structural error. See Mickens, 535 U.S. at 171-74 (rejecting petitioner's argument that trial court's failure to inquire into a potential conflict of interest about which it knew or should have known relieved the defendant of the need to demonstrate that the conflict adversely affected the defendant's counsel's performance). The Court reiterated Cuyler's holding that "'an actual conflict of interest' mean[s] precisely a conflict that affected counsel's performance -- as opposed to a mere

5

theoretical division of loyalties." Mickens, 535 U.S. at 171

(citing Cuyler, 446 U.S. at 349-50) (emphasis in original).

The answer to the granted issue is apparent -- there was no denial of the Sixth Amendment right to counsel of choice because Appellant asked to be represented by detailed counsel and civilian counsel and was so represented. To the extent the alleged conflict of interest exists, it is relevant to the detailed counsel's duty to zealously advocate on behalf of Appellant and raises an ineffective assistance of counsel issue only. Where, as here, Appellant has not alleged any deficiencies in his detailed counsel's performance, it is unnecessary to resolve the question whether defense counsel actively represented conflicting interests because Appellant cannot establish prejudice under Cuyler. Consequently, I respectfully disagree that the Court cannot resolve the ineffective assistant of counsel issue without remanding for further findings and conclusions of law and would affirm the ruling of the United States Navy-Marine Corps Court of Criminal Appeals.[3]

---

[3] Of course the circumstances alleged by Appellant, if true, reflect a failure to adhere to ethics rules, and very poor judgment by both the detailing authority and counsel. But "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.